## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| ADP, INC., | ) | FILED: DECEMBER 18, 2008 |
|  | ) | 08 CV 7258 |
| Plaintiff, | ) | JUDGE NORGLE |
|  | ) | MAGISTRATE JUDGE COLE |
|  | ) | **Case No:** |
| v. | ) |  |
|  | ) | **Judge** |
| WAYNE PORTER, | ) |  |
|  | ) | **Magistrate Judge** |
| Defendant. | ) | YM |

### PLAINTIFF'S COMPLAINT FOR
### SPECIFIC PERFORMANCE, INJUNCTIVE AND OTHER RELIEF

Plaintiff, ADP, Inc. ("ADP"), by and through its attorneys, Synergy Law Group, L.L.C. and Bingham McCutchen LLP, and for its Complaint for Specific Performance, Injunctive and Other Relief against the Defendant, Wayne Porter ("Porter"), states as follows:

### NATURE OF THIS ACTION

1. This is an action by ADP against former employee, Defendant Porter, for breach of contract, breach of the duty of loyalty, tortious interference with prospective business advantages, unfair competition and misappropriation of trade secrets.

### PARTIES

2. ADP is a corporation duly organized and existing under the laws of the State of Delaware, with its headquarters and principal place of business in Roseland, New Jersey.

3. ADP is informed and believes, and thereon alleges, that Defendant Porter, is, and at all times herein mentioned was, a resident of the city of Naperville, County of DuPage, State of Illinois and a former employee of ADP.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a). This is an action between a citizen of Illinois and a citizen of a foreign state. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. ADP is informed and believes, and thereon alleges, that Defendant Porter, is, and at all times herein mentioned was, a resident of the city of Naperville, County of DuPage, State of Illinois.

## FACTS COMMON TO ALL CAUSES OF ACTION

6. For over 50 years, ADP has provided business outsourcing software and services to clients, including human resources, payroll, tax and benefits administration services. ADP offers its services across the United States, including the State of Illinois.

7. ADP has been able to achieve success in the industry by establishing a strong reputation for providing uncompromising, professional customer service to its client base. ADP has expended substantial amounts of money, time and resources over the years to select, hire and train employees to build on and strengthen ADP's reputation.

8. Through half a century of experience in the industry, ADP has invested significant amounts of resources, time, and effort to promoting relationships between its sales employees and its clients. To that end, ADP has:

a. Recruited, hired and trained highly qualified sales employees with expertise in their fields;

b. Extensively marketed its services in the local communities;

c. Provided competitive pricing for the sales employees to offer their clients and prospective clients;

d. Established policies to provide quick and fair responses to any concerns made by clients; and

e. Made customer service a primary goal and objective of its business.

### Defendant Porter's Employment

9. On or about September 2003, ADP hired Defendant Porter as a sales manager in ADP's Chicago office.

10. On or about the inception of Defendant Porter's employment with ADP, ADP and Defendant Porter entered into a written agreement ("Sales Representative's Agreement"). Pursuant to the Sales Representative's Agreement, Defendant Porter agreed that:

> during the period commencing the date [Defendant Porter] becomes an employee of [ADP] and ending one year after the date [Defendant Porter] ceases to be an employee of [ADP] for any reason whatsoever (the "Non-Competition Period"), [Defendant Porter] will not solicit, directly or indirectly, any data processing services business similar to that performed or formally proposed to be performed by [ADP], or solicit the sale, lease or license of any data processing equipment on which such data processing services can be performed or any software which provides output similar to the output provided by such data processing services, from any person, corporation, partnership or other entity whatsoever located within a 75-mile radius of any office in which [Defendant Porter] was employed during the last year of [Defendant Porter's] employment by [ADP] and which at any time during such Non-Competition Period retained the services of [ADP] or any of its divisions, subsidiaries and affiliates (collectively the "ADP Group").
>
> During and after [Defendant Porter's] employment with [ADP], [Defendant Porter] will not disclose to any person, corporation, partnership or other entity whatsoever any business methods, procedures, pricing and marketing structure and strategy, programs, forms, confidential information, trade secrets, the names and addresses of current clients, former clients and prospective clients of the ADP Group, or other data and information relating to the ADP Group learned by [Defendant Porter] at anytime during [Defendant Porter's] employment with [ADP]. Upon termination of [Defendant Porter's] employment with [ADP], [Defendant Porter] will return all copies of all materials which belong to the ADP Group (whether or not such materials were prepared by the ADP Group) and which are

in [Defendant Porter's] possession or over which [Defendant Porter] exercises any control.

[Defendant Porter] will not, during the Non-Competition Period, except in the course of fulfillment of [Defendant Porter's] duties as an employee of [ADP], use or act upon in any way, directly or indirectly, any information which became known to [Defendant Porter] during the course of [Defendant Porter's] employment with the ADP Group concerning the identity or business activity of any current clients, former clients and/or prospective clients of the ADP Group.

During the Non-Competition Period, [Defendant Porter] will not, directly or indirectly, hire, solicit or encourage to leave the ADP Group's employ any employee of the ADP Group, or hire any former employee of the ADP Group within one year after the date such person ceases to be an employee of the ADP Group.

[Defendant Porter] agrees that a violation of the foregoing covenants not to solicit, not to disclose, not to use and not to hire or any other provision thereof will cause irreparable injury to [ADP]. Accordingly, [ADP] shall be entitled to any other rights and remedies it may have at law or in equity, to an injunction enjoining and restraining [Defendant Porter] from doing or continuing to do any such act.
***

11. On or about the inception of Defendant Porter's employment with ADP, ADP and Defendant Porter also entered into a non-disclosure agreement ("Non-Disclosure Agreement"). Pursuant to the Non-Disclosure Agreement, Defendant Porter agreed that:

During and at any time after [Defendant Porter's] employment with [ADP], [Defendant Porter] shall not use, or disclose to any person, corporation, partnership or other entity whatsoever any confidential information, trade secrets, and proprietary information of ADP, its vendors, licensors, marketing partners, or any of its clients (including, but not limited to, (i) ADP's business methods, procedures, pricing and marketing structure and strategy which are not publicly available and which [Defendant Porter] did not learn from a public source, (ii) ADP's source and object codes, computer screens, programs and forms, experimental or research work, methods, processes, formulas or drawings, and (iii) the names, addresses and business activities of ADP's current, former and prospective clients, and/or ADP's and ADP's current, former and prospective clients' employees) learned by [Defendant Porter] at any time during [Defendant Porter's] employment with ADP.

Upon ceasing to be an ADP employee, [Defendant Porter] shall immediately return all documents and notes (including all copies thereof) of any and all information and materials belonging or

relating to ADP (whether or not such materials were prepared by ADP, [Defendant Porter] or another person) and which are in [Defendant Porter's] possession or over which [Defendant Porter] exercise[s] any control.

[Defendant Porter] agree[s] that [his] violation of any provision of [the paragraphs] above will cause irreparable injury to ADP. Accordingly, ADP shall be entitled, in addition to any other rights and remedies it may have at law or in equity, to an injunction enjoining and restraining [Defendant Porter] from violating, or continuing to violate, any such provision.
***

12.    On September 23, 2004, in consideration for Defendant Porter's receipt of stock options from ADP, ADP and Defendant Porter entered into another written agreement ("Stock Option Agreement").  Pursuant to the Stock Option Agreement, Defendant Porter agreed that:

During and after [Defendant Porter's] employment by ADP, [Defendant Porter] will not use, or disclose to any person, corporation, partnership or other entity whatsoever (a "Person") any confidential information, trade secrets and proprietary information of ADP, its vendors, licensors, marketing partners or clients, learned by [him] during [his] employment and/or any of the names and addresses of clients of ADP.  [Defendant Porter] acknowledge[s] that [he] [is] prohibited from taking any confidential, proprietary or other materials or property of ADP with [him] upon termination of [his] employment.  Upon termination of my employment, I shall to return all ADP materials (including, without limitation, all memoranda and notes containing the names, addresses and needs of ADP clients and bona fide prospective clients) in [his] possession or over which [he] exercise[d] control, regardless of whether such material was prepared by ADP, [Defendant Porter] or a third party.

During the 12-month period following the date [Defendant Porter] cease[s] to be an ADP employee for any reason whatsoever (the "Non-Competition Period"), [Defendant Porter] shall not, on [his] behalf or on behalf of any other Person, directly or indirectly, solicit, contact, call upon, communicate with or attempt to communicate with any Person which was a client or a bona fide prospective client of ADP before the date [Defendant Porter] cease[s] to be an ADP employee (the "Termination Date") to sell (license or lease) any software or service competitive or potentially competitive with any software or service sold, licensed, leased, provided or under development by ADP during the two-year period prior to the Termination Date, provided that the restrictions set forth in this paragraph … shall only apply to clients or bona fide prospective

clients of businesses of ADP with which [Defendant Porter] was involved.

During the Non-Competition Period, [he] will not directly or indirectly, hire, contract with, solicit, or encourage to leave ADP's employ any ADP employee, or hire or contract with any former ADP employee within one year after the date such person ceases to be an ADP employee.
***

A violation of the foregoing covenants not to disclose, not to solicit and not to hire will cause irreparable injury to ADP.  ADP shall be entitled, in addition to any other rights and remedies it may have at law or in equity, to an injunction enjoining and restraining [Defendant Porter] from performing, and continuing in the performance of, any such violation.
***

13.  On September 22, 2006, in consideration for Defendant Porter's receipt of additional stock options from ADP, ADP and Defendant Porter entered into a written agreement ("Restrictive Covenant") whereby Defendant Porter agreed that:

During and after [Defendant Porter's] employment by ADP, [Defendant Porter] will not use, or disclose to any person, corporation, partnership or other entity whatsoever (a "Person") any confidential information, trade secrets and proprietary information of ADP, its vendors, licensors, marketing partners or clients, learned by [him] during [his] employment and/or any of the names and addresses of clients of ADP.  [Defendant Porter] acknowledge[s] that [he] [is] prohibited from taking any confidential, proprietary or other materials or property of ADP with [him] upon termination of [his] employment.  Upon termination of my employment, [he] shall return all ADP materials (including, without limitation, all memoranda and notes containing the names, addresses and needs of ADP clients and bona fide prospective clients) in [his] possession or over which [he] exercise[d] control, regardless of whether such materials was prepared by ADP, [Defendant Porter] or a third party.

During the 12-month period following the date [Defendant Porter] cease[s] to be an ADP employee for any reason whatsoever (the "Non-Competition Period"), [Defendant Porter] shall not, on [his] behalf or on behalf of any other Person, directly or indirectly, solicit, contact, call upon, communicate with or attempt to communicate with any Person which was a client or a bona fide prospective client of ADP before the date [Defendant Porter] cease[s] to be an ADP employee (the "Termination Date") to sell (license or lease) any

software or service competitive or potentially competitive with any software or service sold, licensed, leased, provided or under development by ADP during the two-year period prior to the Termination Date, provided that the restrictions set forth in this paragraph … shall only apply to clients or bona fide prospective clients of businesses of ADP with which [Defendant Porter] was involved.

During the Non-Competition Period, [he] will not directly or indirectly, hire, contract with, solicit, or encourage to leave ADP's employ any ADP employee, or hire or contract with any former ADP employee within one year after the date such person ceases to be an ADP employee.
***

A violation of the foregoing covenants not to disclose, not to solicit and not to hire will cause irreparable injury to ADP. ADP shall be entitled, in addition to any other rights and remedies it may have at law or in equity, to an injunction enjoining and restraining [Defendant Porter] from performing, and continuing in the performance of, any such violation.
***

14. During Defendant Porter's employment with ADP, he had possession of and access to ADP's confidential business information, trade secrets and other proprietary information. Among other things, Defendant Porter possessed and had access to ADP business information, including but not limited to ADP's business methods, procedures, pricing and marketing strategy, client information, including the names, addresses, preferences and needs of ADP clients, bona fide prospective clients, vendors and strategies, information regarding the terms of clients' contracts, renewal dates of clients' contracts, and employee information including but not limited to sale information, salary information and performance information, and contact information for employees, and other know-how and confidences of ADP and its businesses (collectively referred to as "Proprietary Information"). This Proprietary Information was and is treated as confidential by ADP, has substantial commercial value and is not readily accessible to the competitors of ADP.

15. While employed by ADP, Defendant Porter had substantial and direct contact with ADP's prospective and current clients. Customer contact included regular meetings and

telephone conversations with current clients of ADP regarding their existing business with ADP. He also met and spoke regularly to prospective clients regarding services that ADP could provide to them.

### Defendant's Unfair Business Practices

16.  Defendant Porter has engaged in unfair competitive activities to interfere with ADP's client relationships that have been established through ADP's considerable efforts and resources.

17.  On or about September, 2008, Defendant Porter resigned from his employment at ADP and notified ADP that he intended to work for The Ultimate Software Group, Inc. ("Ultimate").

18.  ADP is informed and believes, and thereon alleges, that on or around late August or early September 2008, Defendant Porter accepted a position with and began working for Ultimate as a business development manager.

19.  Immediately following his resignation from ADP, Defendant Porter began working for Ultimate, a direct competitor of ADP.

20.  On or about September 2008, ADP learned that Defendant Porter, as an employee of Ultimate, contacted ADP clients in direct breach of the employment agreements between Defendant Porter and ADP.

21.  ADP is informed and believes, and thereon alleges, that Defendant Porter disclosed to Ultimate and used, and is continuing to use, ADP's Proprietary Information in order to target specific ADP clients and solicit them to buy competing services from Ultimate, instead of from ADP.

22.  ADP is informed and believes, and thereon alleges, that Defendant Porter also solicited, directly or indirectly, or assisted others in soliciting and targeting ADP key sales employees.

23.  ADP is informed and believes, and thereon alleges, that each of these acts directed at

ADP was calculated to unfairly and illegally harm ADP's business through the loss of its clients and employees.

24. ADP is informed and believes, and thereon alleges, that Defendant Porter will continue engaging in unfair conduct unless prohibited from doing so.

### Porter Continues to Engage in Unlawful Activity

25. On or about September 29, 2008, ADP contacted Defendant Porter and notified him that he was in breach of his employment agreements described above and asked him to confirm in writing that he would no longer violate the terms of the agreements.

26. The September 29, 2008 letter stated:

> I understand that you left ADP this month to work for The Ultimate Software Group, Inc. ("Ultimate"). Ultimate is a direct competitor to ADP. I also understand that you have already solicited ADP clients that you dealt with at ADP in connection with your Ultimate employment. Such contact is in direct violation of your continuing contractual obligations to ADP and must stop immediately. Your actions are serious violations and ADP is exploring all options concerning your actions since leaving ADP and joining Ultimate.
>
> You have significant continuing legal obligations to ADP, all of which ADP expects you and Ultimate to abide by in full. Copies of agreements between you and ADP are enclosed for your reference. In addition to the above, it is important that you understand the following:
> - ADP expects that neither you, nor anyone else at Ultimate based on information used or provided by you, will be soliciting, contacting or speaking with ADP clients, bona fide prospects, vendors, business partners, or discussing information concerning ADP or its clients, vendors, business partners, services or products.
>
> - ADP expects that neither you, nor anyone else at Ultimate based on information used or provided by you, will be speaking to or contacting present or former employees of ADP for solicitation or hiring purposes or providing information to others to solicit and/or hire ADP employees. You should also not be contacting ADP employees to

request information regarding ADP or ADP's services, products, clients, bona fide prospects, vendors, business partners or employees.

- You should not use, or disclose to Ultimate or others, directly, indirectly or inadvertently, any information concerning or relating to ADP or ADP's services, products, clients, bona fide prospects, vendors, business partners or employees.

- You should have returned to ADP all ADP materials, including but not limited to documents and electronic media containing (a) the names, addresses and needs of ADP clients, bona fide prospective clients, vendors and business partners; (b) information regarding ADP's products, services and strategies; and (c) the names, contact information and sales information regarding ADP employees.

- Please confirm that you (1) have ceased and desisted in soliciting ADP clients; (2) have returned all ADP documents and materials, including but not limited to any documents or electronic media containing any information regarding ADP clients or bona fide prospects; (3) will not in the future, directly or indirectly or through others, solicit, contact, refer or speak with ADP clients, bona fide prospects, vendors, business partners or employees or discuss information concerning ADP or its services, products or employees; (4) will not in the future, use or disclose any confidential or proprietary information; and (5) intend to fully comply with your obligations in the future.
***

27. As of the date of the filing of this Complaint, Defendant Porter has not responded to ADP's request.

28. On or about December 11, 2008, ADP contacted Defendant Porter again to notify him that he was in breach of these agreements and ask him to confirm in writing that he would no longer violate the terms of the agreements.

29. That December 11, 2008 letter stated, in part:

> In a letter dated September 29, 2008, ADP wrote to you reminding you of your obligations under certain written employment agreements with ADP containing restrictive covenants. Copies of those agreements are enclosed for your reference. The agreements are legally binding and enforceable, and impose certain continuing legal obligations on you. These obligations include:
>
> ***
>
> (2) not soliciting, contacting, or calling upon ADP clients, or bona fide prospective clients, during the twelve (12) months following your termination;
>
> (3) not directly or indirectly hiring, contracting with, or soliciting current and former ADP employees during the twelve (12) months following your termination; and
>
> (4) not using or disclosing any confidential, proprietary or trade secret information concerning ADP or its clients.
>
> ADP is informed and believes that you have failed to comply with these legal obligations. Specifically, ADP has learned that you are currently employed as a sales representative for one of ADP's direct competitors, Ultimate Software Group, Inc. ("Ultimate"), working within the same geographic territory as the one you covered during your employment as a sales representative with ADP. ADP has further learned that you have been calling upon and soliciting ADP's clients or assisting others at Ultimate to solicit them. ADP has also learned that you have been using and disclosing ADP's confidential, proprietary or trade secret information.
>
> Your conduct constitutes a breach of the agreements and violates other statutory and common laws. On behalf of ADP, we demand that you immediately cease and desist your actions. We ask that you or your legal representative provide us written assurance by December 15, 2008 confirming that you understand your obligations under the agreements, that you agree to fully comply with them and that you have ceased the violative actions described above. If you refuse to provide these assurances by December 15, 2008, or otherwise continue to breach the agreements as of that date, we will promptly initiate legal action against you on behalf of ADP to protect its interests.

30.  As of the date of the filing of this Complaint, Defendant Porter has failed and refused to respond to ADP's request.

### COUNT I
**Specific Performance - Breach Of September 29, 2003 Sales Representative's Agreement**

31.  Plaintiff ADP adopts and incorporates by reference all allegations contained in Paragraphs 1- 30 as if fully set forth herein.

32.  ADP entered into a Sales Representative Agreement with Defendant Porter on September 29, 2003.  This agreement was accepted and agreed to by Defendant Porter and forms part of his employment agreement with ADP.

33.  ADP performed all conditions, covenants and promises required of it under the terms and conditions of its employment agreement with Defendant Porter, except for those promises, conditions and covenants excused by the acts and omissions of Defendant Porter as described herein.

34.  Defendant Porter breached this agreement by soliciting, contacting, or calling on ADP clients, or bona fide prospective clients, during the twelve (12) months following his termination.

35.  ADP is informed and believes, and thereon alleges, that Defendant Porter also breached this agreement by soliciting, directly or indirectly, or assisting others in soliciting and targeting ADP key sales employees.

36.  ADP is informed and believes, and thereon alleges, that Defendant Porter also breached this agreement by disclosing or using Proprietary Information.

37.  Plaintiff, ADP, respectfully requests the Court grant it the following relief:

a.   Enter an order compelling Porter to specifically comply with the terms of the Sales Representative's Agreement;

b.  Award to ADP all costs and disbursements for the prosecution of this action; and such other relief as the Court may deem just or appropriate.

## COUNT II
### Specific Performance - Breach Of September 29, 2003 Non-Disclosure Agreement

38.  Plaintiff ADP adopts and incorporates by reference all allegations contained in Paragraphs 1- 37 as if fully set forth herein.

39.  ADP entered into a Non-Disclosure Agreement with Defendant Porter on September 29, 2003.  This agreement was accepted and agreed to by Defendant Porter and forms part of his employment agreement with ADP.

40.  ADP performed all conditions, covenants and promises required of it under the terms and conditions of its employment agreement with Defendant Porter, except for those promises, conditions and covenants excused by the acts and omissions of Defendant Porter as described herein.

41.  ADP is informed and believes that Defendant Porter breached this agreement by using or disclosing the Proprietary Information of ADP.

42. ADP is informed and believes, and thereon alleges, that Defendant Porter also breached this agreement by not returning ADP's Proprietary Information and other information and materials belonging or relating to ADP.

43.  Plaintiff, ADP, respectfully requests the Court grant it the following relief:

    a.   Enter an order compelling Porter to specifically comply with the terms of the Non-Disclosure Agreement;

    b.   Award to ADP all costs and disbursements for the prosecution of this action; and such other relief as the Court may deem just or appropriate.

## COUNT III
**Specific Performance - Breach Of September 23, 2004 Stock Option Agreement**

44. Plaintiff ADP adopts and incorporates by reference all allegations contained in Paragraphs 1-43 as if fully set forth herein.

45.  ADP entered into a Stock Option Agreement with Defendant Porter on September 23, 2004.  This agreement was accepted and agreed to by Defendant Porter and forms part of his employment agreement with ADP.

46.  ADP performed all conditions, covenants and promises required of it under the terms and conditions of its employment agreement with Defendant Porter, except for those promises, conditions and covenants excused by the acts and omissions of Defendant Porter as described herein.

47. Defendant Porter breached this agreement by soliciting, contacting, or calling on ADP clients, or bona fide prospective clients, during the twelve (12) months following his termination.

48. ADP is informed and believes, and thereon alleges, that Defendant Porter also breached this agreement by soliciting, directly or indirectly, or assisting others in soliciting and targeting ADP key sales employees.

49. ADP is informed and believes, and thereon alleges, that Defendant Porter also breached this agreement by disclosing or using Proprietary Information.

50. Plaintiff, ADP, respectfully requests the Court grant it the following relief:

    a. Enter an order compelling Porter to specifically comply with the terms of the Stock Option Agreement;

    b. Award to ADP all costs and disbursements for the prosecution of this action; and such other relief as the Court may deem just or appropriate.

## COUNT IV
### Specific Performance - Breach Of September 22, 2006 Restrictive Covenant

51. Plaintiff ADP adopts and incorporates by reference all allegations contained in Paragraphs 1- 50 as if fully set forth herein.

52. ADP entered into a Restrictive Covenant with Defendant Porter on September 22, 2006. This agreement was accepted and agreed to by Defendant Porter and forms part of his employment agreement with ADP.

53. ADP performed all conditions, covenants and promises required of it under the terms and conditions of its employment agreement with Defendant Porter, except for those promises, conditions and covenants excused by the acts and omissions of Defendant Porter as described herein.

54. Defendant Porter breached this agreement by soliciting, contacting, or calling on ADP clients, or bona fide prospective clients, during the twelve (12) months following his termination.

55. ADP is informed and believes, and thereon alleges, that Defendant Porter also breached this agreement by soliciting, directly or indirectly, or assisting others in soliciting and targeting ADP key sales employees.

56. ADP is informed and believes, and thereon alleges, that Defendant Porter also breached this agreement by disclosing or using Proprietary Information.

57. Plaintiff, ADP, respectfully requests the Court grant it the following relief:

a.   Enter an order compelling Porter to specifically comply with the terms of the Restrictive Covenant;

b.   Award to ADP all costs and disbursements for the prosecution of this action; and such other relief as the Court may deem just or appropriate.

### COUNT V
### Breach Of Loyalty

58. Plaintiff ADP adopts and incorporates by reference all allegations contained in Paragraphs 1- 57 as if fully set forth herein.

59.  As an employee of ADP, Defendant owed his employer an undivided duty of loyalty including but not limited to the duty to advance the interests of ADP, the duty to preserve ADP's Proprietary Information, and the duty not to use any of ADP's Proprietary Information in any way adverse to ADP's interests.

60.  While employed with ADP, Defendant was entrusted with cultivating and developing ADP's valuable client relationships and, as a result, had access to highly competitive information and trade secrets.

61.  Even following his resignation, Defendant Porter continues to owe a duty to ADP not to make use of its Proprietary Information.

62.  ADP is informed and believes, and thereon alleges, that Defendant Porter breached the duty of loyalty to ADP by using and/or disclosing ADP's Proprietary Information and by negotiating with and accepting employment with Ultimate for a position that would violate the terms of his agreements with ADP.

63.  As a direct and proximate result of Defendant Porter's actions, ADP has suffered damages in an amount according to proof.

64.  The actions of Defendant Porter were intentional, willful, wanton and malicious and were specifically designed to damage ADP's business.  ADP is therefore entitled to punitive

damages.

## COUNT VI
### Tortious Interference With Prospective Business Advantages

65. Plaintiff ADP adopts and incorporates by reference all allegations contained in Paragraphs 1- 64 as if fully set forth herein.

66. ADP had an existing economic relationship, or one containing the probability of future economic benefit, with clients.

67. Defendant Porter knew of the above described economic relationship existing between ADP and certain clients in that Defendant Porter was formerly employed with ADP from September 2003 to September 2008 and during his employment had supervised these client accounts.

68. ADP is informed and believes, and thereon alleges, that Defendant Porter intentionally disrupted the relationships.

69. ADP is informed and believes, and thereon alleges, that Defendant Porter acted unlawfully to interfere with economic relations through the conduct described herein.

70. As a result of Defendant Porter's intentional interference with prospective business advantages, ADP has suffered damages in an amount according to proof.

71. The aforementioned acts of Defendant Porter were willful, fraudulent and malicious. ADP is therefore entitled to punitive damages.

## COUNT VII
### Unfair Competition

72. Plaintiff ADP adopts and incorporates by reference all allegations contained in Paragraphs 1- 71 as if fully set forth herein.

73. Defendant Porter has engaged in common law unfair competition by engaging in activities that are unlawful, unfair and fraudulent, as described above.

74. ADP is informed and believes, and based thereon alleges, that Defendant Porter's

conduct was undertaken with the intent to interfere and disrupt ADP's business.

75. As a result of Defendant Porter's unfair competition, ADP has suffered damages in an amount according to proof.

76. The aforementioned acts of Defendant Porter were willful, fraudulent and malicious. ADP is therefore entitled to punitive damages.

## COUNT VIII
### Misappropriation Of Trade Secrets: Illinois Trade Secret Act

77. Plaintiff ADP adopts and incorporates by reference all allegations contained in Paragraphs 1- 30 as if fully set forth herein.

78. The Illinois Trade Secret Act, 765 ILCS 1065/1 et seq. ("ITSA"), prohibits the misappropriation of trade secrets.  765 ILCS 1065/2(d) defines trade secret as:

> information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

79. ADP's Proprietary Information constitutes trade secrets within the meaning of the ITSA, 765 ILCS 1065/1 et seq.

80. ADP has spent considerable time and resources developing its Proprietary Information.  ADP's Proprietary Information contains trade secrets that are vital to ADP's business.

81. During Defendant Porter's employment, he was entrusted with, and regularly used, ADP's Proprietary Information to further ADP's business.

82. Defendant Porter gained access to ADP's Proprietary Information through the course and scope of his employment and under circumstances giving rise to a duty to maintain their secrecy and limit their use, including specific contractual obligations to that effect.

83. At all times ADP took affirmative measures to keep its Proprietary Information secret, including internal and external security. The Proprietary Information was available to limited users only through unique and individual user passwords, and Defendant Porter was routinely informed of the highly confidential and secret nature of the Proprietary Information, which he acknowledged in writing in the Agreements forming his employment relationship with ADP.

84. ADP's Proprietary Information gives it a competitive advantage over its competitors. ADP's Proprietary Information derives independent economic value from not being generally known to other persons (such as competitors like Ultimate) who can obtain economic value from their disclosure.

85. ADP is informed and believes, and thereon alleges, that Defendant Porter disclosed ADP's Proprietary Information to Ultimate and that Defendant Porter used ADP's Proprietary Information in soliciting ADP's clients and/or employees.

86. By using the Proprietary Information to benefit himself and/or his new employer Ultimate, Defendant Porter wrongfully misappropriated ADP's Proprietary Information in violation of the ITSA.

87. Defendant Porter resigned his employment with ADP with an express intent to serve as an employee of Ultimate in direct competition with ADP, providing to Ultimate substantially the same services he provided while employed at ADP.

88. Given the nature of ADP and Ultimate's respective business and Defendant Porter's former position at ADP, coupled with his access to information including, but not limited to, ADP's Proprietary Information, Defendant Porter cannot reasonably be expected to compete with ADP without utilizing and disclosing his former employer's Proprietary Information.

89. Defendant Porter's present competitive conduct on behalf of Ultimate has lead and/or will lead to inevitable use and disclosure.

90. ADP is informed and believes, and thereon alleges, that Defendant Porter will continue to use ADP's Proprietary Information to solicit ADP's clients and/or employees absent injunctive relief.

91. As a result of Defendant Porter's violation of ITSA, ADP has suffered damages in an amount according to proof.

92. The above-described acts of Defendant Porter were and are willful, wanton, and malicious, entitling ADP to recover exemplary damages pursuant to ILCS 1065/4(b) in an amount up to twice the actual damages and unjust enrichment, as well as its attorneys' fees pursuant to ILCS 1065/5.

93. Section 3 of the ITSA allows this Court to enjoin the misappropriation of ADP's Proprietary Information, 765 ILCS 1065/3(a), and compel Defendant Porter to take affirmative acts to protect ADP's trade secrets from future misappropriation, 765 ILCS 1065/3(c).

## RELIEF REQUESTED

WHEREFORE, based upon the acts and omissions of the Defendant Porter as described above, Plaintiff, ADP, now seeks the following relief:

1. That Defendant Porter be restrained from destroying or disposing of any paper documents in his possession, custody, or control, or deleting anything from any computers to which he has access including handheld PDAs, or any other electronic storage devices, including email, databases, and any other electronically stored data that relate to, evidence, or concern any of the issues involved in this litigation, and that Defendant Porter immediately turn over all of the electronic devices in his possession, custody or control for non-destructive imaging to preserve the contents of these electronic devices;

2. That Defendant Porter be directed immediately to return all originals and copies of information, documents and other things taken from ADP, including all copies of the client lists and other ADP business information in Defendant Porter's possession or control, in hard copy or

electronically stored form (all electronically stored records must also be deleted permanently from Defendant Porter's computers or other electronic memory files) and if any such materials are no longer within the Defendant Porter's possession or control to account fully for where such materials have been dispersed;

3.  That Defendant Porter be immediately enjoined from revealing, disclosing or using in any manner information contained in the ADP materials and any other ADP business information;

4.  That this Court award ADP damages in an amount equal to all compensation paid to Defendant Porter, including, without limitation, salary, benefits and expense reimbursement, during the time period in which he violated his duty of loyalty while employed at ADP;

5.  For actual damages according to proof;

6.  For an order temporarily, preliminarily and permanently enjoining Defendant from directly or indirectly soliciting ADP's clients and/or employees;

7.  For Defendant Porter to specifically perform the duties under the above-described employment contracts;

8.  For punitive damages;

9.  For enhanced damages pursuant to the Illinois Trade Secret Act;

10. For prejudgment interest;

11. For attorneys' fees and costs of suit; and

12. For such other relief as the Court may deem proper.


[More]

## DEMAND FOR TRIAL BY JURY

ADP respectfully requests trial by jury on all claims so triable.

Respectfully Submitted,

ADP, Inc.

By: <u>s/ Joseph L. Kish</u>
One of its Attorneys

Joseph L. Kish (#6197916)
Shaina A. Moss (#6283585)
Trisha M. Cole (#6289247)
Synergy Law Group, L.L.C.
730 West Randolph, 6th Floor
Chicago, IL  60661
312.454.0015 (phone)
312.454.0261 (fax)

Robert A. Lewis (Pro Hac Vice admission pending)
Walter M. Stella (Pro Hac Vice admission pending)
Bingham McCutchen LLP
Three Embarcadero Center
Suite 2800
San Francisco, CA 94111
415.393.2000 (phone)
415.393-2286 (fax)